UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
**BROOKE OLIVIERI,**                                 **CASE NO.**

            **Plaintiff,**                       **COMPLAINT**

         v.                                     **DEMAND FOR JURY TRIAL**

**SAKS & COMPANY, LLC,**

            **Defendant.**
-------------------------------------------------------x

Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.    This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Equal Pay Act, 29 U.S.C. 206(d) ("EPA"). This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.    Venue is proper in this District because Defendant conducts business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

3.    Defendant Saks & Company, LLC ("Saks") is a Delaware corporation with retail clothing stores throughout the country. Saks' corporate headquarters are in New York.

4.    Plaintiff Brooke Olivieri is a citizen of New York. She has been employed by Defendant since 2010 in the Corporate Investigations Office. Her current title is Senior Manager of Investigations.

## **FACTS**

5. Plaintiff began working for Defendant as a Manager of Investigations in 2010.

6. In that position, her primary job duties were to identify internal investigations and conduct interviews.

7. Plaintiff was an excellent employee and consistently received positive feedback and performance reviews.

8. Accordingly, in 2013, Plaintiff was promoted to Senior Manager of Corporate Investigations.

9. In that position, Plaintiff became responsible for all internal investigation at all Saks stores and for supervising all Saks stores on protocols designed to minimize employee-related theft/shortage.

10. When Plaintiff was promoted in 2013, she was assigned one direct report.

11. As time continued, Plaintiff was eventually supervising 4 direct reports, with additional Saks-owned stores, such as Saks Off Fifth and Lord & Taylor being added to her domain of supervision.

12. Plaintiff is the only female out of roughly 10 senior employees working at Saks' Asset Protection Department's New York location, which is the primary location of the department.

13. Defendant treated Plaintiff less favorably than her male equals.

14. When Plaintiff was assigned extra reports and supervision of those reporting employees' additional stores/territories, Plaintiff did not receive additional pay or an increase in title.

15. When male senior level individuals in other parts of the Asset Protection Department – such as the current Regional Asset Protection Directors – are given additional stores/territories to manage, they typically receive additional compensation and an increase in title. These individuals include Pat McEvoy, Bryan Granata and Jeff Cox.

16. While these individuals' responsibilities relate more to overall general asset protection than to employee theft specifically, their jobs – managing Saks stores' treatment of shortage – involved equal skills, responsibilities, and effort as Plaintiff's. They were all responsible for different aspects of the overall asset protection program at Saks. Yet the men receive higher job titles and corresponding salary raises for additional work.

17. Since her promotion in 2013, Plaintiff's territory expanded to include supervision of all Lord & Taylor stores and Saks Off Fifth stores. To be sure, in 2013, Plaintiff's territory included about 40 Saks stores, and now it includes about 200 Saks, Saks Off Fifth, and Lord & Taylor stores. However, Plaintiff did not receive any corresponding raises in salary (other than company-wide incremental raises) and/or changes in titles during that period.

18. Plaintiff was informed by a former supervisor that the "guys" get a "raise and a bump" every time their territory increases.

19. When Catherine Riccards was Senior Director of Investigations and Business Conduct, she informed Plaintiff that she was informing Saks that she believed that Plaintiff should become a Director to oversee the entire Investigations Department. In addition, Ms. Riccards made this suggestion in writing, in a portion of Plaintiff's annual review to be viewed only by the Review Committee.

20. To be sure, Plaintiff's counterpart in Canada (working under the corporate umbrella Hudson Bay Company), Jim Lonsbary, in fact has the Director title.

3

21. In or about July of 2018, Defendant decided to bring on a Director to oversee the Investigations Department. But instead of considering Plaintiff, a natural fit given her experience and Ms. Riccards' recommendation, Defendants simply passed over Plaintiff for a male coworker, Tom Kilgallon.

22. Plaintiff is a mother of two young children. Her husband's work often requires him to be at work at night. Thus, Plaintiff is unable to regularly engage in overnight travel.

23. This was not in any way an impediment to Plaintiff's productivity at Saks. In fact, under her previous two female supervisors, there was an understanding that absent emergency situations requiring Plaintiff's physical presence at a Saks store, Plaintiff conducted interviews by phone and did not travel overnight. Plaintiff produced consistently good results under this system, and her work product was always praised within the company.

24. When Mr. Kilgallon became plaintiff's supervisor in July 2018, he immediately made life difficult for Plaintiff to get her, the only senior level female in the department's New York location, to leave the company.

25. Mr. Kilgallon continuously badgers Plaintiff with overnight travel requests, knowing full well that her parental status requires that she be home at night. When Plaintiff pointed this out, Mr. Kilgallon ignored Plaintiff's pleas and kept insisting that she travel overnight, saying, "There is no reason you cannot go these stores."

26. To be clear, again, overnight travel is not an essential part of Plaintiff's job. During her close to 10 years with Saks, she performed her job more than satisfactorily without regularly travelling.

27. Mr. Kilgallon knows that Plaintiff cannot travel, and his repeated insistence that she do so is a thinly-veiled attempt to force her resignation.

28. On one occasion, Plaintiff sent Mr. Kilgallon a text message explaining why Mr. Kilgallon's approach to a certain matter was impractical and would involve more work than could be completed within the allotted time frame. Mr. Kilgallon responded mockingly by sending Plaintiff a text message containing just a picture of a violin. This juvenile behavior further illustrates Mr. Kilgallon's bullying tactics toward Plaintiff.

29. Defendant's brazen mistreatment of Plaintiff has caused her severe humiliation and emotional distress, loss of sleep and anxiety, in addition to loss of income.

30. In or about mid-October of 2018, Plaintiff, on the advice of a medical health professional took some time off to deal with this distress.

31. During that time period, Mr. Kilgallon, approached Plaintiff's direct report, Mike McDonnell, and said to him, "I don't know why Brooke doesn't just go sit home and be an Analyst," which is a much lower position than her current position.

32. Plaintiff was particularly humiliated that Mr. Kilgallon retaliated against her by disparaging her to an underling and insinuating to him that she did not belong.

## FIRST CLAIM FOR RELIEF
(Equal Pay Act ("EPA"), 29 U.S.C. §§ 206(d), 216(b))

33. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

34. Defendant discriminated against Plaintiff within the meaning of the Equal Pay Act of 1963 in violation of the Fair Labor Standards Act of 1938, 26 U.S.C. §§ 206 *et seq.*, by providing her with lower pay than similarly situated male colleagues on the basis of her gender even though Plaintiff performed similar duties requiring the same skill, effort, and responsibility as her male counterparts.

35. Defendants discriminated against Plaintiff by subjecting her to discriminatory pay, discriminatory denials of bonuses and other compensation, discriminatory denial of promotions, and other forms of discrimination in compensation in violation of the EPA.

36. The differential in pay between male and female employees is/was not due to seniority, merit, quantity or quality of production, or a factoxxxxr other than sex, but was due to gender.

37. Defendants caused, attempted to cause, contributed to or caused the continuation of wage discrimination based on gender, in violation of the EPA.

38. The foregoing conduct constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).

39. As a result of Defendant's conduct as alleged in this Complaint, Plaintiff suffered and continues to suffer harm, including but not limited to: lost earnings, lost benefits, and other financial loss, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

40. Plaintiff seeks all legal and equitable remedies available for violations of the EPA, including unpaid compensation, liquidated damages, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**(NYCHRL, N.Y. Admin. Code §§ 8-101 *et seq.*,**
**Discrimination)**

41. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

42. In violation of the New York City Human Rights Law, Defendant intentionally discriminated against and/or aided and abetted discrimination against Plaintiff on the basis of her gender and/or parental status.

43. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including, but not limited to, loss of income, including past and future salary.

44. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

45. Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily-protected rights.

46. As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for economic loss, emotional distress, physical injuries, and medical treatment; punitive damages; attorneys' fees and costs; and such other legal and equitable relief as this Court deems just and proper.

47. The New York City Commission on Human Rights will be notified and sent a copy of this complaint.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. An award of damages, according to proof, including compensatory damages, emotional distress damages, back pay, front pay, punitive damages, and liquidated damages, to be paid by Defendant;

B. Penalties available under applicable laws;

C. Costs of action incurred herein, including expert fees;

D. Attorneys' fees;

E. Interest as provided by law; and

F. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: New York, New York  
November 1, 2018

Respectfully submitted,

JOSEPH & KIRSCHENBAUM LLP

By: ___/s/ D. Maimon Kirschenbaum___  
D. Maimon Kirschenbaum  
32 Broadway, Suite 601  
New York, NY 10004  
Tel: (212) 688-5640  
Fax: (212) 688-2548

*Attorneys for Plaintiff*

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.